**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | |
| | **:** | |
| **DONTREY BELL** | **:** | **CRIMINAL NO. 23-CR-410 (CKK)** |
| | **:** | |
| **Defendant.** | **:** | |
| | **:** | |

## <u>UNITED STATES' SENTENCING MEMORANDUM</u>

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this memorandum to aid the Court in its sentencing proceeding. The government requests this Court to sentence the defendant, Dontrey Bell, to 168 months of incarceration, followed by 10 years of supervised release.

## <u>BACKGROUND</u>

On May 6, 2023, Witness 1, the defendant's romantic partner, discovered multiple videos on an old phone belonging to the defendant and linked to his cloud storage. The videos showed the defendant sneaking into the bedroom of Witness 1's thirteen-year-old daughter while the child slept. Witness 1 called 911. Shortly thereafter, law enforcement officers responded to her residence in the 2300 block of Hartford St. NW in Washington, DC. Witness 1 explained to law enforcement that she had been in a relationship with the defendant for approximately three years and that they had lived together for two-and-a-half years at her home on Hartford Street. Witness 1's thirteen-year-old daughter, hereinafter Minor Victim 1 (MV1), also lived at the residence. Witness 1 showed the videos that she had discovered to the responding officer, who recorded the videos on her bodyworn camera. The videos were timestamped between August 9, 2022, and April 28, 2023, and were each recorded between 4:00 AM and 6:00 AM.

1

The first video, dated August 9, 2022, shows the defendant walking into MV1's bedroom and masturbating his exposed erect penis next to the child's head while she sleeps. At one point, the defendant steps forward so that his penis is directly over the child's head. In a video dated February 19, 2023, the defendant lifts up the bedsheets and records MV1's body. MV1 is wearing underwear. In the next two videos, dated March 8, 2023, and April 15, 2023, the defendant records MV1 sleeping and lifts the covers off of her. In a video dated April 28, 2023, the defendant lifts the covers off of MV1, who is not wearing underwear, exposing her naked buttocks. In the final video, also dated April 28, 2023, the defendant records himself putting his head under MV1's sheet while she sleeps. MV1 appears to wake up and the defendant tells her he was trying to remove a cat from her bedroom.

Witness 1 also showed law enforcement another photograph of MV1 that she had discovered on the defendant's phone. Witness 1 advised that the photograph was a picture that Minor Victim 1 had taken of her breasts on her own phone and sent to a boy on a prior occasion.[1] Witness 1 had scolded Minor Victim 1 for sending the photograph when Witness 1 learned about it. Witness 1 told law enforcement that the defendant must have gone into Minor Victim 1's phone, found the photo, and sent it to himself.

Subsequent forensic analysis of the cell phone by law enforcement revealed that the defendant had uploaded the videos, including the video of himself masturbating near MV1's head, to his Google photos account.

On October 26, 2023, the defendant was arrested pursuant to an arrest warrant. The defendant waived his *Miranda* rights and agreed to be interviewed by law enforcement. He stated

---

[1] Witness 1 did not show the entire photograph to law enforcement, just the thumbnail in the Photo Gallery, which appears to just capture Minor Victim's 1 head.

that he was taking molly and mushrooms daily during the period in which the videos were recorded, as well as drinking hard liquor, such that his memory would be gone for two or three days at a time, and that he had no memory of going into Minor Victim 1's bedroom. The defendant claimed that he searched his Google accounts after Witness 1 confronted him and found one video showing Minor Victim 1 sleeping, but no other videos of Minor Victim 1.

## DISCUSSION AND RECOMMENDATION

### I.     Generally Applicable Legal Principles

In *United States v. Booker*, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in *Blakely v. Washington*, 124 S. Ct. 2531 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, 18 U.S.C. § 3553(b)(1). *Booker*, 125 S. Ct. at 756.

In post-*Booker* cases, the Supreme Court has stated that a district court should begin all sentencing proceedings by correctly calculating the applicable guidelines range. *See United States v. Gall*, 552 U.S. 38, 49 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."). After giving both parties an opportunity to argue for an appropriate sentence, the district court should then consider all of the applicable factors set forth in 18 U.S.C. § 3553(a). *Id.* These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. § 3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the kinds of sentences available (18

U.S.C. § 3553(a)(3)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); the need to avoid unwarranted sentencing disparities (18 U.S.C. § 3553(a)(6)); and the need to provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7)).

## II.    Government's Sentencing Recommendation

The defendant's Sentencing Guidelines range is 135-168 months of incarceration. The government recommends a Guidelines sentence of 168 months of incarceration, to be followed by ten years of supervised release. This sentence recognizes the seriousness of the defendant's conduct and ensures that he will be monitored for a significant period of time upon his release. Moreover, as discussed below, this sentence is consistent with the factors set forth in 18 U.S.C. § 3553(a).

### A.    Nature and Circumstances of the Offense

The defendant has pled guilty to transportation of child pornography. His conduct, however, is far more egregious than the offense of conviction suggests. The defendant did not simply upload child sexual abuse material depicting an anonymous child. Instead, the defendant created child pornography of a 13-year-old girl whom he not only knew, but with whom he lived. For months, he took advantage of both his access to this child and the trust that her mother had in him. He exploited her in her home, when she was at her most vulnerable, to satisfy his own sexual urges. His repeated forays into the child's bedroom to uncover and film her body are extremely disturbing, exploitative, and dangerous. The defendant's conduct demonstrates both a dangerous sexual interest in children and a callous disregard towards a child who trusted him, violating her privacy and potentially destroying her ability to feel safe in her own home.

Given the egregious nature of the defendant's criminal conduct, a sentence of 168 months of incarceration is appropriate.

B.      History and Characteristics of the Defendant

The defendant has no prior criminal convictions, although he does have two arrests in 2010 and 2019 for gun offenses. In addition, a D.C. Superior Court arrest warrant was issued for the defendant in June 2016 for Paternity Support; the defendant was arrested on the outstanding warrant in August 2017. The defendant also reports a history of drug use and, indeed, appeared to use his use of molly and mushrooms as an excuse for the offense conduct during his interview with law enforcement. Furthermore, although the government acknowledges hardships in the defendant's childhood, there is nothing in his past that would justify or mitigate his conduct in this case.

Moreover, the defendant seems to have made deliberate misrepresentations to the Psychosexual Evaluator during his examination. His claim that he is not aroused by "prepubescent children, pubescent teens, or anyone much younger than himself," *see* Report at 10, is flatly contradicted by his conduct in this case – namely, masturbating his erect penis next to a sleeping 13-year-old girl's face and repeatedly venturing into her bedroom at night to film her body. His lack of candor to the evaluator and, by extension, this Court, about his sexual interest in children is troubling. Moreover, the evaluator's acceptance of this self-serving statement at face value – despite the clear evidence to the contrary – undercuts any of her subsequent conclusions.

In short, there is nothing in the defendant's history or characteristics that would merit a reduced sentence. Accordingly, this factor also supports the government's recommended sentence of 168 months of incarceration.

5

C.      The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and Provide Just Punishment for the Offense

This factor is known as the "just desserts" concept, answering the need for retribution so that the punishment fits the crime and the defendant is punished justly. *See United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010). The *Irey* court cited the Senate Report regarding this provision:

> This purpose--essentially the "just desserts" concept--should be reflected clearly in all sentences; it is another way of saying that the sentence should reflect the gravity of the defendant's conduct.  From the public's standpoint, the sentence should be of a type and length that will adequately reflect, among other things, the harm done or threatened by the offense, and the public interest in preventing a recurrence of the offense.   (quoting S.Rep. No. 98-225, at 75-76, 1984 U.S.C.C.A.N. 3258-59).  *Id.*

Here, the defendant's offense was extremely serious: he produced child pornography of a 13-year-old girl with whom he lived. A sentence of 168 months of incarceration reflects this seriousness and justly punishes the defendant for his exploitation of a vulnerable child.

D.      Adequate Deterrence and Protection of the Public

Congress, the Supreme Court, and the Sentencing Commission believe that general deterrence is an important factor when considering an appropriate sentence. *See United States v. Fry*, 851 F.3d 1329, 1332 (D.C. Cir. 2017) (the sentence would deter Fry and "others who may be inclined in doing similar kinds of things."). General deterrence is especially relevant here, when the defendant's offense involves a member of the most vulnerable community. A sentence at the high end of the Guidelines alerts other individuals that a serious sentence awaits those who commit similar crimes against children. Thus, the government's recommended sentence adequately serves this goal.

E.    The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct

Section 3553(a)(6) requires courts to consider the need to avoid unwarranted sentencing disparities among defendants "with similar records who have been found guilty of similar conduct." However, it "does not require the district court to avoid sentencing disparities between [ ]defendants who might not be similarly situated." *United States v. Mattea*, 895 F.3d 762, 768 (D.C. Cir. 2018) (quoting *United States v. Guillermo Balleza*, 613 F.3d 432, 435 (5th Cir. 2010). Here, the U.S. Sentencing Commission's Judicial Sentencing Information shows that the average sentence length for individuals sentenced under U.S.S.G. § 2G2.1, with a final offense level of 33 and Criminal History Category I, was 128 months during Fiscal Years 2020—2024. The median sentence length was 131 months. The government's recommended sentence is higher than this average; however, a sentence of 168 months of incarceration takes into account the defendant's additional conduct. He did not just produce child sexual abuse material of the victim, but he repeatedly snuck into her bedroom while she slept, uncovered her body, and filmed her, including when she was unclothed. His actions violated both the child's privacy and the trust of her and her mother, and threatened the child's ability to feel safe in her own home. Moreover, had the defendant pled guilty to the lead charge in this case – Sexual Exploitation of a Child – he would face a mandatory minimum sentence of 180 months of incarceration. Thus, the plea offer already represents a significant benefit to the defendant. Accordingly, there is no unwarranted disparity presented by the government's recommendation of 168 months of incarceration.

F.    Restitution

The government does not anticipate a restitution request. If the government receives a victim impact statement prior to sentencing, those documents will be submitted under seal prior to the hearing.

7

## CONCLUSION

For the reasons set forth above, the Government respectfully requests that the Court sentence the defendant to a period of 168 months of incarceration, to be followed by 10 years of supervised release.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY


By:

    */s/ Caroline Burrell*
Caroline Burrell
Assistant United States Attorney
Child Exploitation and Human Trafficking
Section
601 D Street, NW
Washington, D.C. 20530
(202) 252-6950
Caroline.Burrell@usdoj.gov

8